Minute Order Form (0/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1537 | **DATE** | 8/19/2002 |
| **CASE TITLE** | David McIntyre vs. Household Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to stay proceedings pending arbitration [8-1] is granted. This court will retain jurisdiction to address any legal issues that may remain after the parties' arbitration proceeding.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 20 2002 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID McINTYRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 1537 |
| v. ) | |
| ) | Judge Ruben Castillo |
| HOUSEHOLD BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David McIntyre ("McIntyre") filed a class action suit[1] against defendant Household Bank ("Household") for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), the Federal Reserve Board Regulation Z, 12 C.F.R. § 226 ("Regulation Z"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and for unjust enrichment. Currently, Household moves to stay these proceedings pending arbitration of his claims pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, *et seq.* For the reasons set out herein, we grant Household's motion and stay the proceedings pending arbitration. (R. 8-1.)

## RELEVANT FACTS

In February 2000, McIntyre applied for a Household credit card.[2] By signing his

---

[1] Although McIntyre styled his Complaint as a class action, his attorneys have not yet filed a motion for class certification. We address below the status of his class-action claims in the context of a motion to stay.

[2] McIntyre alleges in his initial complaint that he never requested or applied for the credit card. (R. 1-1, Compl. ¶ 6.) He later concedes, however, that he did in fact apply for a credit card from Household and mailed the application and a $19 processing fee in exchange for the opportunity to receive credit. (R. 11-1, Pl.'s Resp. at 3.)

application, McIntyre acknowledged that he had "reviewed the disclosures provided on the reverse side and on the enclosure," and agreed to be bound "by the terms and conditions contained in the Household Bank Cardholder Agreement and Disclosure Statement" that would be sent with the credit card. (R. 8-1, Mot. to Stay, Ex. B.) The application further states that an annual fee of $79 would be charged to the new MasterCard and would appear on the first statement. (R. 12-1, Mot. to Supp., Ex. A.)

Household extended credit to McIntyre, mailed him his new MasterCard along with the Household Bank Cardholder Agreement and Disclosure Statement ("Agreement") and charged the $79 annual fee to his account. McIntyre admits that he received the card and the Agreement. (R. 1-1, Compl. ¶¶ 6-8.) The Agreement, which according to its terms became effective as of "the first use of the Card or Account," (R. 8-1, Mot. to Stay, Ex. A), contains the following clause:

> [A]ny claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause or any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed....THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT, BUT THAT THEY AGREE TO HAVE AN ELECTION TO RESOLVE ANY CLAIMS THROUGH ARBITRATION, AND THAT THEY HEREBY WAIVE THEIR RIGHTS TO LITIGATE CLAIMS IN A COURT UPON ELECTION OF ARBITRATION BY EITHER PARTY.

(*Id.*) McIntyre did not use the credit card to make purchases or cash advances and thus claims that there was no "first use" of the card and that the Agreement's terms, including its mandatory arbitration provision, do not apply to him. Currently before the Court is Household's motion to stay proceedings pending arbitration of McIntyre's claims.

## ANALYSIS

A court's decision whether to stay proceedings pending arbitration is a question of contract interpretation. It is axiomatic that an arbitration clause cannot be enforced against a party who has not agreed to be bound. *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986); *United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). However, "once it is clear the parties have a contract that provides for arbitration . . . any doubts concerning the scope of the arbitration clause should be resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). Courts must observe the strong federal policy favoring arbitration by liberally and broadly construing contractual language concerning the scope of arbitral issues and resolving all doubts as to coverage in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-5 (1983); *Thompson v. Ill. Title Loans, Inc.*, No. 99 C 3952, 2000 WL 45493, at *1 (N.D. Ill. Jan. 11, 2000); *Lieschke v. RealNetworks, Inc.*, No. 99 C 7274, 2000 WL 198424, at *2 (N.D. Ill. Feb. 11, 2000).

The court, and not the arbitrator, determines whether the parties formed a contract and are bound by its arbitration clause. *Barter Exch., Inc. of Chi. v. Barter Exch., Inc.*, 606 N.E.2d 186, 190 (Ill. App. Ct. 1992). In determining whether a contract exists, courts should employ state law principles of contract interpretation, resolving ambiguities in favor of arbitration.[3] *In re*

---

[3] One threshold question, therefore, is which state's law applies. The contract law of at least three states—Illinois, Alabama and Nevada—could control in this case. The parties have not addressed conflict of law, so we are obliged to independently assess the applicable state law. As discussed above, a contract was formed when Household accepted McIntyre's credit application. This result would be the same under each state's law and therefore we need not decide which law controls. *See Martin v. GEICO*, 565 N.E.2d 197 (Ill. App. Ct. 1990); *United Ins. of Am. v. Headrick*, 157 So.2d 19 (Ala. 1963); *Gulf Oil Corp. v. Clark County*, 575 P.2d

3

*RealNetworks, Inc.*, No. 00 C 1366, 2000 WL 631341, at *1 (N.D. Ill. May 8, 2000). *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (parties' intentions are generously construed regarding issues of arbitration). In this case, McIntyre's submitted application constituted an offer to contract that Household accepted when it approved his application and mailed the credit card and Agreement to him. *See, e.g., Martin v. GEICO*, 565 N.E.2d at 201 (in insurance context, application following a solicitation was considered an offer which the insurance company could accept to form a binding contract).

The court's duty on a § 3 motion to stay is to determine whether McIntyre was party to an agreement that contains a facially valid arbitration clause. Having done so, our work is finished, and we may not consider arguments concerning the unfairness of the contract formation process or the validity of the entire agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (a court may decide whether the arbitration clause was fraudulently induced but may not consider claims of fraud regarding the contract as a whole); *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 277 (7th Cir. 1992); *Thompson*, 2000 WL 45493, at *2. If the underlying dispute is within the ambit of the arbitration clause, resolution of the dispute is for the arbitrator, even when the underlying dispute involves the validity of the entire contract. *Flender*, 953 F.2d at 277; *Herwig v. Hahnaman-Albrecht, Inc.*, No. 96 C 6107, 1997 WL 72079, at *3 (N.D. Ill. Feb. 13, 1997); *Tyco Labs, Inc. v. Dasi Indus., Inc.*, No. 92 C 5712, 1993 WL 356929, at *6 (N.D. Ill. Sept. 9, 1993) (substantive challenges to the whole contract rather than to the individual arbitration clause are to be determined by the arbitrator).

In is well established in this circuit that arguments pertaining to the enforceability of the

---

1332 (Nev. 1978).

contractual terms are within the arbitrator's province. *See Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 390 (7th Cir. 1984) ("[a] defense to enforceability of contractual provisions, as opposed to the denial of the existence of any contractual relationship, does not deprive the arbitration clause of its effectiveness . . . . [Such claims] are susceptible to resolution through the arbitral process."). *See also Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591-92 (7th Cir. 2001); *Colfax Envelope Corp. v. Local No. 458-3M, Chi. Graphic Comm. Int'l Union*, 20 F.3d 750, 752 (7th Cir. 1994) (dispute over the meaning of a contractual term is for the arbitrator to decide); *Rainbow Invest., Inc. v. Super 8 Motels, Inc.*, 973 F. Supp. 1387, 1389, 1392 (M.D. Ala. 1997) (noting that claim that "agreement never went into effect due to failure of a condition precedent" did not negate finding that parties had made an agreement to arbitrate). Thus, McIntyre's argument that the terms of the Agreement were not binding until he first used the card, as well as the merits of McIntyre's underlying causes of action, are for the arbitrator to decide.

Similarly, we need not decide McIntyre's argument that the arbitration clause is unenforceable if it includes an attorney's fee provision at odds with otherwise-applicable law. McIntyre, relying on *McCaskill v. SCI Management Corporation*, 285 F.3d 623 (7th Cir. 2002), claims that Seventh Circuit law requires us to invalidate the entire arbitration clause because it contravenes the attorney-fee provisions in TILA and the Illinois Consumer Fraud and Deceptive Business Practices Act. But *McCaskill I* was withdrawn on a petition for rehearing, and the subsequent opinion retreats from its original holding that such arbitration provisions would be invalid. *See McCaskill v. SCI Mgmt. Corp.*, No. 00-2839, 2002 WL 1790529 (7th Cir. Aug. 5,

5

2002).⁴ Moreover, it is an open question in this circuit as to whether the judge in a § 3 action or the arbitrator decides whether "parties to a contract may agree to replace a fee-shifting system with the American Rule . . . and, whether, if a contractual choice of the American Rule is indeed forbidden, this spoils the entire arbitration clause." *See Metro East Center for Conditioning and Health v. Qwest Communications Int'l, Inc.*, 294 F.3d 924, 928 (7th Cir. 2002). In *Metro East*, the court noted that at least three courts of appeals have held that the arbitrator, and not the judge, determines whether contractual limitations on remedies are valid. *Id.* at 929. *See also United Super, Inc. v. Werries*, 253 F.3d 1083 (8th Cir. 2001); *MCI Telecomm. Corp. v. Matrix Communications Corp.*, 135 F.3d 27, 33 n.12 (1st Cir. 1998); *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222 (3d Cir. 1997). *But see Graham Oil Co. v. Arco Prod. Co.*, 43 F.3d 1244 (9th Cir. 1995) (court reverses district court preliminary injunction and order compelling arbitration, finding that arbitration clause that purported to waive certain statutory rights was invalid in its entirety). We hold that in the context of a § 3 motion to stay pending arbitration, this Court's sole responsibility is to determine whether the parties entered into a valid contract with an arbitration clause; it is the arbitrator's duty to ascertain whether the attorney's fees limitation is valid.

While statutory claims are arbitrable only if that forum provides an opportunity for fair

---

⁴ In a two-judge concurrence, Judge Bauer reversed the district court order compelling arbitration and remanded based solely on the defendant's admission at oral argument that the arbitration provision would be unenforceable if it were construed to limit the plaintiff's right to recover attorney's fees under Title VII. Judge Rovner, concurring with the judgment but rejecting Judge Bauer's grounds for decision, cites *McCaskill I* and holds that the arbitration clause is unenforceable because the attorney's fee provision is contrary to applicable law. Judge Manion dissents, questioning the court's jurisdiction to hear the appeal. Given the uncertainty surrounding this issue, as well as our limited role under FAA § 3, we will not invalidate the arbitration clause.

adjudication of a litigant's claims, a fair hearing does not require all of the procedure available to a litigant in court. *Universal Restoration Serv., Inc. v. Paul W. Davis Sys., Inc.*, No. 908-C-2027, 2002 WL 596380, at *4 (N.D. Ill. Apr. 17, 2002). *See also Cremin v. Merill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997) (claims that are properly before an arbitral forum pursuant to an arbitration agreement override the Seventh Amendment right to a jury trial). Compelling arbitration of McIntyre's claims will not forego any of his statutory rights; rather, it simply submits them to an arbitral, rather than a judicial, forum. *Arellano v. Household Fin. Corp.*, 01 C 2433, 2002 WL 221604, at *5 (N.D. Ill. Feb. 13, 2002). *See also Wood v. Cooper Chevrolet, Inc.*, 102 F. Supp. 2d 1345, 1350 (N.D. Ala. 2000) (noting that plaintiff's potential TILA claims were not released or settled, but moved to a different forum).[5]

Finally, while TILA allows for class actions, there is not an undeniable right to class actions under the statute and they may be waived in order to enforce arbitration. *Thompson*, 2000 WL 45493, at *4; *Wood*, 102 F. Supp. 2d at 1349. In agreeing to arbitrate, McIntyre did not sign away his ability to pursue his substantive rights under TILA, but only his option to use the

---

[5] McIntyre's other arguments, which rely primarily on California law, are not persuasive. McIntyre cites *Danford v. Schwabacher*, 342 F. Supp. 65, 68 (N.D. Cal. 1972), for the proposition that a trial by jury cannot be waived by an arbitration clause unless the agreement to arbitrate was knowingly and voluntarily made. McIntyre also relies on Ninth Circuit cases for the proposition that before a party to a lawsuit can be ordered to arbitrate and deprive himself of a day in court, there should be an express, unequivocal agreement. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991); *Long v. Fidelity Water Sys., Inc.*, No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000). In fact, the Seventh Circuit construes arbitration clauses more liberally than the Ninth Circuit, *see In re Real Networks*, 2000 WL 423637, at *4, and the Seventh Circuit has not adopted a knowing and voluntary standard for enforceability of arbitration agreements, *see Universal Restoration Serv., Inc. v. Paul W. Davis Sys., Inc.*, No. 908-C-2027, 2002 WL 596380, at *3 (N.D. Ill. Apr. 17, 2002). The Ninth Circuit's strict approach to arbitration agreements does not control here and thus McIntyre's argument is unavailing.

procedural device of class action in a judicial forum. *See e.g., Thompson*, 2000 WL 45493, at *4. Therefore, although McIntyre is entitled to seek relief on his underlying claims during arbitration, he will not be able to do so in the context of a class action.

## CONCLUSION

Although we are sympathetic to McIntyre's situation, Congress and the Seventh Circuit have both implemented strong policies favoring arbitration agreements and it is not for the courts to rewrite the policy favoring arbitration in individual cases. Because there is a contract containing an arbitration clause and the contractual disputes which are the subject of this lawsuit are within the coverage of that broad arbitration clause, we are compelled to submit the underlying contractual disputes to arbitration. We believe that arbitration will serve as a fair and just forum for McIntyre to submit his claims. We therefore grant Household's motion to stay these proceedings. (R. 8-1.) We will, however, retain jurisdiction to address any legal issues that may remain after the parties' arbitration proceeding.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: August 19, 2002**