## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID MCINTYRE, individually and on )
behalf of all others similarly situated, )
                     )
             Plaintiff, )
                     )    No. 02 C 1537
     vs.               )
                     )
HOUSEHOLD BANK,        )    Judge Castillo
                     )
         Defendant.    )

FILED
JUL 2 7 2004
MICHAEL W. DOBBINS
CLERK U.S. DISTRICT COURT

DOCKETED
JUL 2 8 2004

### NOTICE OF FILING

To:    See attached service list

      PLEASE TAKE NOTICE that today we filed the attached **First Amended Class Action Complaint** with the Clerk of the Federal District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, a copy of which is hereby served upon you.

                             _____
                             One of Plaintiff's Attorneys

Dated: July 27, 2004

Janet R. Varnell
Brian W. Warwick
VARNELL & WARWICK, P.A.
20 La Grande Blvd.
The Villages, FL 32159
Phone: (352) 753-8600
Fax:    (352) 753-8606

James Shedden
Michael S. Hilicki
Tony H. Kim
BEELER, SCHAD & DIAMOND, P.C.
322 South Michigan Ave.
Suite 1000
Chicago, IL 60604-4398
Phone: (312) 939-6280
Fax:    (312) 939-4661

34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MCINTYRE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 02 C 1537 |
| vs. | ) ) ) | Judge Castillo |
| HOUSEHOLD BANK, | ) ) | |
| Defendant. | ) | Jury Demanded |

*FILED*

JUL 2 7 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*DOCKETED*

JUL 2 8 2004

---

## FIRST AMENDED CLASS ACTION COMPLAINT

---

Plaintiff complains as follows:

### PRELIMINARY STATEMENT

1. This is a class action brought on behalf of low income consumers who have had credit card accounts opened in their names and charges applied to those accounts by Household Bank without their consent in violation of Federal and State law.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the federal claims under the Truth-in-Lending Act, 15 U.S.C. § 1640(e), Federal Reserve Board Regulation Z, 12 C.F.R. § 226, and under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because Defendant Household Bank has its principal place of business in this District, and because the officers and directors responsible for orchestrating the scheme described below are also located in this District.

---

FIRST AMENDED CLASS ACTION COMPLAINT                                        PAGE 1



## THE PARTIES

4.     Plaintiff, David A. McIntyre, is a resident of the State of Alabama.

5.     Defendant, Household Bank, is a limited-purpose bank chartered in the State of Nevada as a national banking association, and it is a member of the Federal Reserve System. Household Bank's principal place of business is located in Illinois.

## FACT ALLEGATIONS

6.     This case arises from Household's illegal credit card lending practices. Household activated credit card accounts in the name of Plaintiff and numerous other consumers without their knowledge or consent, it imposed charges on the cards even though the cards were never used, and it failed to disclose that it had activated the cards and imposed the charges.

7.     Plaintiff is a low-income consumer who was solicited by Household for a credit card. Household's solicitation described a credit card with a limit of up to $1,500, and the solicitation included a form credit card application. See Exhibit A, attached. Plaintiff paid the requested $19.00 application fee to Household in exchange for the opportunity to receive, in the future, an offer to enter into a contract with Household for open-ended credit in the form of a credit card to be issued by Household. The final terms of the credit card offer were not known to Plaintiff when he signed the application and paid the application fee.

8.     Several weeks after Plaintiff mailed the completed application to Household, he received a credit card and the Household Bank "Cardholder Agreement" in the mail. See Exhibit B, attached. Instead of a $1,500 credit limit, Household offered Plaintiff a credit limit of only $300.00; $79.00 of which would be consumed at the outset by the annual fee if he accepted the offer.

---

FIRST AMENDED CLASS ACTION COMPLAINT                                    PAGE 2

9.    According to the Cardholder Agreement, Plaintiff could only accept the offer by using the card. The first paragraph of the Cardholder Agreement states:

> HOUSEHOLD BANK (Nevada), N.A., Las Vegas, Nevada ("Bank") is happy to enroll you as a member of its CREDIT CARD PROGRAM ("Program"), and to issue a MasterCard ("Card") for accessing your card account. The terms and conditions of the Program are contained in this CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT, (the "Agreement"), as amended from time to time. ***The terms and conditions of the Agreement become effective as of the first use of the Card or Account.***

See Exhibit B. (emphasis added).

10.    Because of the largely useless nature of a credit card with such a low credit limit and excessive annual fee, Plaintiff chose not to accept Household's offer. Plaintiff never used the card.

11.    Although Plaintiff never used the card, Household – unbeknownst to Plaintiff – unilaterally activated the card, opened an account in Plaintiff's name, and charged the $79.00 annual fee to the account in contradiction of the terms of the contract formation provision of the Cardholder Agreement. Household never told Plaintiff that it had opened an account in his name and imposed charges on the account. Household also never sent Plaintiff monthly statements or other documents that would have put him on notice that Household had opened an account in his name.

12.    On or about March 3, 2001, Plaintiff received a letter from a collection agency trying to collect $263.23 allegedly due on the alleged account. Household had compounded the $79.00 annual fee with interest and late fees to reach the $263.23 amount allegedly owed.

13.    Plaintiff immediately contacted the collection agency to inquire about the matter because he believed that it had to be a mistake. The collection agency told Plaintiff that it did not have the details about the alleged debt and that he needed to contact Household.

14. On March 5, 2001, Plaintiff contacted Household customer service to ask about the matter. The Household customer service representative that Plaintiff spoke to acknowledged that Household's records indicated that Plaintiff had never used the card.

15. The Household customer service representative also told Plaintiff that Household's normal business practice is to automatically activate consumer credit card accounts and charge the annual fee thirty days after the card and cardholder agreement are mailed to the consumer.

16. The Household customer service representative also told Plaintiff that Household proceeds in this manner unless the consumer contacts Household and specifically declines the card.

17. The Household customer service representative also told Plaintiff that because Plaintiff did not call to specifically decline the card, Plaintiff owed the amount the collection agency was trying to collect from him even though he never used the card.

18. The Household customer service representative further told Plaintiff that Household had sold Plaintiff's alleged debt to a collection agency, and that as a result Plaintiff would have to deal with the collection agency regarding the alleged debt.

19. Plaintiff's March 5, 2001 conversation with Household was the first time Plaintiff learned that these were Household's policies and procedures for activating credit card accounts. None of the documents Household sent Plaintiff disclosed these policies and procedures. To the contrary, the Cardholder Agreement that Household sent to Plaintiff stated that the card would not be activated until his "first use" of the card. See ¶ 9, above.

20. Plaintiff's March 5, 2001 conversation with Household was also the first time that Plaintiff learned that Household had activated the card, opened an account in his name and imposed charges on the account.

21.    Because Household admitted to Plaintiff that its actions were part of its standard business practices, Plaintiff seeks to certify a class of consumers who, like him, had a credit card account unilaterally activated in their name and charged by Household.

## CLASS ALLEGATIONS

22.    Plaintiff, on behalf of himself and the Class of similarly situated people, seeks compensatory and punitive damages, as well as statutory damages, attorneys' fees, and costs for Household's violations of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), Federal Reserve Board Regulation Z, 12 C.F.R. § 226 ("Regulation Z"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. ("Illinois Consumer Fraud Act"), and Household's unjust enrichment.

23.    Plaintiff also seeks a declaration and injunction to remedy Household's unlawful practices.

24.    Plaintiff brings this action individually and as a class action for damages, declaratory relief and injunctive relief under Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the following class:

> All people within the United States who had a credit card account opened in their name and fees charged to that account by Household Bank, who never used the card to make a purchase or obtain a cash advance, and for which the contract governing the account provides that the contract becomes effective upon the "first use" of the card or account.

25.    **Numerosity of the Class (Fed. R. Civ. P. 23(a)(1)).** The class members are so numerous that their individual joinder is impractical. The class contains thousands of members. Household's records contain the identities and locations of all class members, including whether the putative account holder used the card.

---

FIRST AMENDED CLASS ACTION COMPLAINT                                    PAGE 5

26. The credit limit on Plaintiff's card was $300.00. As a result, Plaintiff believes that Household specifically targeted consumers with low income, poor credit or both.

27. **Existence and Predominance of Common Questions of Fact and Law (Fed. R. Civ, P. 23(a)(2), (b)(3)).** There are questions of law or fact common to the class that predominate over questions affecting only individual members of the class. The questions of law or fact common to the class include, but are not limited to, the following:

    a.    Whether Household violated TILA by opening accounts in the name of Plaintiff and the class members without their authorization;

    b.    Whether Household violated TILA and Regulation Z by not sending monthly billing statements informing Plaintiff and the class members that Household had opened accounts in their names and imposed charges on the accounts;

    c.    Whether Household's representations pertaining to the activation of accounts in its proposed Cardholder Agreement were misleading or deceptive in violation of the Illinois Consumer Fraud Act;

    d.    Whether Household's unilateral activation scheme constitutes a deceptive or unfair business practice under the Illinois Consumer Fraud Act; and,

    e.    Whether Household was unjustly enriched by collecting money in connection with accounts that were never used by Plaintiff or class members.

28. **Typicality of Claims (Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the class' claims because Household engaged in the same or materially the same course of conduct, in accordance with its standard business practices, by unilaterally opening credit card accounts for Plaintiff and the class members and imposing charges on the accounts without authorization, and by

failing to notify Plaintiff and the class members that it had opened accounts in their name and imposed charges on the accounts, in violation of both federal and state law.

29.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no conflict of interest with other members of the class and he and the class members stand to recover damages in this suit. Plaintiff has retained counsel who are experienced in class action litigation, and who are competent to represent and protect the interests of the class.

30.     **Common Questions Predominate (Fed. R. Civ. P. 23(b)(3))**.  The common questions in this action arise out of a common course of conduct by Household. The causes of action raised herein are based on standard business practices and form documents used by Household. Common questions predominate over any individual issues with regard to the claims at issue.

31.     **Superiority of the Class Action (Fed. R. Civ. P. 23(b)(3))**.  A class action is a superior method for fairly and efficiently adjudicating this dispute.  The damages suffered by Plaintiff and each class member are small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Household's conduct. It would be virtually impossible for class members to individually obtain effective redress for the wrongs done to them. Furthermore, resolving the claims of Plaintiff and the class members in one lawsuit will conserve judicial resources.   Individualized litigation of the claims of Plaintiff and the class would also create the potential for inconsistent or contradictory judgments.

32.     **Certification of Plaintiff's Declaratory and Injunctive Relief Claims (Fed. R. Civ. P. 23(b)(2))** Plaintiff also seeks to certify the class for injunctive and declaratory relief under Rule 23(b)(2).

33.    Injunctive and declaratory relief are appropriate because Household acted in a manner generally applicable to Plaintiff and the class as a whole. After Household unilaterally activated the credit card accounts and posted charges to the accounts, it reported accounts as outstanding to the credit bureaus and sold accounts to third parties as collection receivables. As a result, Plaintiff and the class members are subject to collection activities on unowed debts. Plaintiff seeks an injunction that requires Household to remove all references to the alleged accounts from Plaintiff's and the class members' credit reports, and to take all actions necessary to stop collection efforts on these accounts. Plaintiff also seeks a declaration that any adverse information relating to the accounts is invalid and should be removed from Plaintiff's and the class members' credit reports. The Illinois Consumer Fraud Act expressly provides for equitable relief. See 815 ILCS 505/10a(c).

## FIRST CAUSE OF ACTION

### (Violations of the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., and Regulation Z, 12 C.F.R. § 226, et seq.)

34.    Plaintiff hereby incorporates by reference and re-alleges all preceding paragraphs as if set forth in full, and further alleges as follows.

35.    The TILA, 15 U.S.C. § 1637(a), and Regulation Z, 12 C.F.R. § 226.5(b)(1), require creditors like Household to furnish an initial disclosure statement to the cardholder before the first transaction is made under the credit plan. The initial disclosure statement must reflect the terms of the proposed legal obligation between the parties under the plan, and must state the circumstances under which the finance charge will accrue, the periodic rate that may be used to compute the finance charge, and the amount of any other charges. See 12 C.F.R. § 226.6(a), (b) and § 226.5(c).

36.    Household's initial disclosure statement does not disclose that finance charges will begin to accrue on the card or account before the card is used. However, Household imposed

charges on Plaintiff's and the class members' alleged accounts even though they never used the card. Accordingly, Household's initial disclosure statement violates the TILA and Regulation Z.

37.     Under the TILA, 15 U.S.C. § 1637(b)(1), (4), (7), and Regulation Z, 12 C.F.R. § 226.7(a) and (e)-(f) and (h), Household must give a periodic statement to each card holder, for each billing cycle in which a balance is carried on the credit card, that accurately discloses, among other things, the outstanding balance on the account at the beginning of the statement period, the finance charge, the amount of any "other charges" applied during the billing cycle, and the outstanding balance owed on the account at the end of the billing period.

38.     Household never sent Plaintiff and the class members the required periodic statements in violation of the TILA, 15 U.S.C. § 1637(b)(1), (4), (7), and Regulation Z, 12 C.F.R. § 226.7(a), (e)-(f) and (h).

39.     Household's policy of not sending a periodic billing statement until the consumer uses the card to make a purchase or obtain a cash advance violates the TILA, 15 U.S.C. § 1637(b)(1), (4), (7), and Regulation Z, 12 C.F.R. § 226.7(a), (e)-(f) and (h). Furthermore, Household's failure to send the statements, or to otherwise give consumers who never used the cards notice that it has opened accounts in their name, prevented such consumers from discovering Household's TILA violation.

40.     Household's practice of adding late fees and interest to accounts without sending the required periodic statements also violates the TILA, 15 U.S.C. § 1637(b)(1), (4), (7), and Regulation Z, 12 C.F.R. § 226.7(a), (e)-(f) and (h).

41.     Household's practice of unilaterally opening accounts without an authorization from consumer violates Regulation Z, 12 C.F.R. § 226.12(a).

42.     Household's misrepresentations and omissions also violate the disclosure requirements of Regulation Z, 12 C.F.R. § 226.17.  Household failed to make the required disclosures to Plaintiff and the class before charging fees on their alleged accounts, and therefore it violated the clear and conspicuous disclosure requirements of Regulation Z, 12 C.F.R. § 226.17.

43.     Household's violations of TILA and Regulation Z entitle Plaintiff and the class to recover actual damages, statutory damages, costs and attorneys' fees. See 15 U.S.C. § 1640.

## SECOND CAUSE OF ACTION

### (Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1, et seq.)

44.     Plaintiff hereby incorporates by reference and re-alleges all preceding paragraphs as if set forth in full, and further alleges as follows.

45.     Household actions, described above, constitute deceptive and unfair business practices that violate the Illinois Consumer Fraud Act, 815 ILCS 505/1, et seq., as follows:

i.     Household's alleged practices violate TILA, 15 U.S.C. § 1601, et seq., and Regulation Z, 12 C.F.R. § 226.7, 226.12 and 226.17;

ii.     Household's standard business practices, including its misrepresentations regarding when and how an account is activated and can start accruing charges, are deceptive and unfair; and,

iii.     Household reported accounts it unilaterally opened to the credit bureaus, and it subjected the putative account holders to collection activities.

---

FIRST AMENDED CLASS ACTION COMPLAINT                    PAGE 10

46.     Household's violation of the Illinois Consumer Fraud Act entitles Plaintiff and the class to recover actual damages, punitive damages, equitable relief, costs and attorneys' fees. <u>See</u> 815 ILCS 505/10a(a) and (c).

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

47.     Plaintiff hereby incorporates by reference and re-alleges all preceding paragraphs as if set forth in full and further alleges as follows.

48.     By employing the scheme set forth above, Household collected money on credit card accounts that were never used.

49.     Household should not, in equity and good conscience, be allowed to retain the money it collected in connection with the scheme described above.

50.     The money Household collected in connection with the scheme described above should be disgorged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on his own behalf and on behalf of the class, prays that the Court enter all orders necessary in favor of Plaintiff and the class, and against Household, to:

A.     Certify this case as a class action and appoint Plaintiff and his counsel to represent the class;

B.     Award actual damages, statutory damages, and punitive damages;

C.     Disgorge the money Household received in connection with the scheme described above;

FIRST AMENDED CLASS ACTION COMPLAINT                                    PAGE 11

D.   Enjoin Household:

(1)   from engaging in the unfair and deceptive practices described above;

(2)   to effect the removal of any information placed on the credit reports of Plaintiff and the class members relating to the accounts; and,

(3)   to take all actions needed to stop collection efforts on the accounts;

E.   Declare that any information relating to the accounts on Plaintiff's and the class members' credit reports is invalid and should be removed;

F.   Award pre-judgment and post-judgment interest, as well as Plaintiff's and the class' reasonable attorneys' fees and costs; and

G.   Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

David McIntyre,

One of Plaintiff's Attorneys

Dated: July 27, 2004

Janet R. Varnell
Brian W. Warwick
VARNELL & WARWICK, P.A.
20 La Grande Blvd.
The Villages, FL 32159
Phone: (352) 753-8600
Fax:    (352) 753-8606

James Shedden
Michael S. Hilicki
Tony H. Kim
BEELER, SCHAD & DIAMOND, P.C.
322 South Michigan Ave.
Suite 1000
Chicago, IL 60604-4398
Phone: (312) 939-6280
Fax:    (312) 939-4661



**Start the *New Millennium* right!**
**You've Been Pre-Approved!***
Reply by March 3, 2000 to
Receive Your New MasterCard®

John Q. Sample
Orchard Bank ALL 12
123 Any Street
Anytown, US 12345-6789

Dear John Q. Sample,

You've heard about a New Year's resolution but what about a New Millennium resolution? Here are some ideas...

☐ Vacuum dust bunnies under the bed
☐ File taxes early
☐ Get the oil changed in the car
☐ Call Mom more often
☐ Exercise more
☐ Get a MasterCard

We can't do much about the first few, but we can help you with the last one! Simply complete the four easy steps below.

Here's how easy it is:

☒ Fill in the Resolution Certificate.
☒ Sign and date your Resolution Certificate.
☒ Enclose the $19 one-time processing fee¹¹ in the form of a check or money order.
☒ Mail the Resolution Certificate and processing fee in the enclosed postage paid envelope.

(over, please)

H195

**New Millennium Resolution Certificate** | CREDIT LIMIT $1,500* | REPLY BY March 3, 2000



**YES, I WANT TO CHECK OFF AT LEAST ONE OF MY NEW MILLENNIUM RESOLUTIONS.**
I have enclosed the $19 one-time processing fee made payable to *Household Bank*.

☐ **CHECK HERE FOR RUSH PROCESSING!**
The additional $35 rush processing fee will be charged to your account and will appear on your first statement. *Please note: If paying your $19 one-time processing fee by personal check, processing may be delayed by 14 days. Paying by cashier's check or money order is recommended.*

· 9999999999999-9999-9999
John Q. Sample
Orchard Bank ALL 12
123 Any Street
Anytown, US 12345-6789

| Social Security Number | | Date of Birth |
|---|---|---|
| Gross Monthly Income $ | | Other Income¹ $ |
| Home Phone ( ) | E-mail Address (Optional) | |
| Are You Currently Employed? ☐ Yes ☐ No | US Citizen or Permanent Resident? ☐ Yes ☐ No | |
| Employer (or Business Name if Self-Employed) | Work Phone ( ) | |
| Nearest Relative's Name | Relative's Phone ( ) | |

I certify that the information in this Resolution Certificate is true and correct, and is given in order to obtain credit. I authorize Household Bank (Nevada), N.A. ("you," "your") to verify the information provided, to obtain reports about me and to answer questions about your experience with me from time to time. I also understand that you reserve the right to assign a credit limit based on my current creditworthiness or to not open a credit card account with me if: the information requested on the Resolution Certificate is not complete, is inaccurate or cannot be verified; I have responded to a Household Bank credit card offer within the last 90 days; I presently have two or more credit card accounts with Household Bank; I am not 18 years of age or older; I am not a Citizen or Permanent Resident of the U.S.; my annual income does not equal or exceed $11,520; I do not have a telephone in my residence; or there is a significant change in the information about my creditworthiness. I've reviewed the disclosures provided on the reverse side and on the enclosure. I agree to be bound by the terms and conditions contained in the Household Bank Agreement and Disclosure Statement that will be sent to me with the credit card. Household Bank reserves the right to assign this Resolution Certificate or any resulting account to another bank.

¹If you do not have an first income from alimony, child support, or separate maintenance payment UNLESS you would have considered as a basis for repaying the obligation.

Cardholder Signature _____ Date _____

**EXHIBIT**
**A**
tabbies

This is the easiest New Millennium resolution ever! An annual fee of $79" will be conveniently charged to your new MasterCard and will appear on your first statement. With your new MasterCard, you can charge purchases by phone, take your friends out for dinner, or go on that much needed vacation. Simply complete the four easy steps today and you're on your way to accomplishing one of your New Millennium resolutions!

You can also take advantage of our rush processing option by checking the appropriate box on your Resolution Certificate. The additional $35 rush processing fee will be billed to your new account. We will send your card to you via express service upon approval of your account (a signature is required for delivery).

The Household Bank MasterCard ... the easiest New Millennium resolution ever!

Sincerely,

Janet G. Johnston
Director of Marketing

P.S. Talk about easy, you are pre-approved! Send in your Resolution Certificate today.

If you have any questions about this card, call us toll-free: 1-888-288-0391
Monday through Friday from 5 AM to 7 PM (Pacific Time).

There are some things money can't buy, for everything else there's MasterCard.™

* "Pre-approval" means you have been specially selected to receive this offer of credit from us. Keep in mind that certain creditworthiness criteria that we established in connection with this offer must be met or verified before credit can actually be extended to you. If approved, your credit limit will be based on your creditworthiness and will be at least $300.

If you have filed for bankruptcy, have the debts been discharged? If your bankruptcy was filed in the past 12 months, send a copy of the discharge papers. A Chapter 13 bankruptcy must be at least 8 months old.

Household Bank (Nevada), N.A. ("Bank") used information obtained from a consumer reporting agency in connection with this offer. You received this offer because you satisfied certain criteria for creditworthiness that the Bank previously established for this offer. The credit that the Bank has offered may not be extended to you if, after you respond to this offer, the Bank determines that you do not meet the criteria used to select you for this offer or any other applicable criteria bearing on creditworthiness. You have a right to prohibit information contained in your file with any consumer reporting agency from being used in connection with any credit transaction that is not initiated by you. You may exercise this right by calling 1-888-567-8688 or writing these agencies: Experian, P.O. Box 2002, Allen, TX 75013-0036; Equifax Options Inc., P.O. Box 740123, Atlanta, GA 30374-0123; and Trans Union, Name Removal Opt-Out Request, P.O. Box 97328, Jackson, MS 39288.

Information Sharing Disclosure — At our discretion, we may communicate information solely about our transactions or experiences with you to persons related to us by common ownership or affiliated by corporate control. We may also, at our discretion, communicate other information to these same persons, unless you direct us in writing at P.O. Box 81022, Salinas, California 93912-1622 to not exchange this other information. If you write, please provide the name, address, social security number, signature, and, if applicable, account number for each person making the decision. Your request will not apply to the sharing of information relating to your transactions or experience with us.

†† A variable APR of 18.9% will apply. If at any time the account is one or more days past due or 3% or more over limit, a variable APR of 22.9% will apply. Cash Advance Fee: The greater of 3% of the cash advance or $3. Annual Fee: $79 per year. Processing Fee: $10 at origination only.

Credit card issued by Household Bank (Nevada), N.A., Las Vegas, Nevada. Household Bank is a registered mark of Household International, Inc.

MasterCard is a registered mark of MasterCard International, Incorporated.

Please see additional Solicitation Disclosures enclosed.

Offer void in Wisconsin.

# Household Bank®

HOUSEHOLD BANK (NEVADA), N.A.
MASTERCARD® CARDHOLDER AGREEMENT
AND DISCLOSURE STATEMENT

HOUSEHOLD BANK (Nevada), N.A. Las Vegas, Nevada ("Bank") is happy to enroll you as a member of its CREDIT CARD PROGRAM ("Program"), and to issue a MasterCard ("Card") for accessing your card account ("Account"). The terms and conditions of the Program are contained in this CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT (the "Agreement"), as amended from time to time. The terms and conditions of the Agreement become effective as of the first use of the Card or Account.

## INFORMATION SHARING DISCLOSURE

At our discretion we may communicate information solely about our transactions or experiences with you to persons related to us by common ownership or affiliated by corporate control. We may also, at our discretion, communicate other information to these same persons, unless you direct us in writing at P.O. Box 81022, Salinas, California 93912-1022, to not exchange this other information. If you write, please provide name, address, social security number, signature and, if applicable, account number for each person making the electronic request. Your request will not apply to the sharing of information relating to your transactions or experience with us.

## 1. DEFINITIONS

"You" or "your" means each and every person who applies for, signs, accepts, uses, or is authorized to use the Card, or any credit feature of the Card or Account. "We", "us", and "our" mean the Bank and its assignees and successors. "Purchase Advance" means all goods, services and any other charge obtained with your Card or the Account, other than Cash Advances. "Other Charges" means extra fees and service charges, such as Annual Fees, Late Payment Fees, Returned Payment, Fees, Replacement Card Fees for an additional card or PIN, and Overlimit Fees. "Cash Advance" means all cash or equivalent, obtained from bank, Automated Teller Machines or others through the use of the Card or Account. (Purchase Advances and Cash Advances are sometimes referred to collectively in this Agreement as "Advances"). If you use an ATM owned by a person other than us, the owner of the ATM may impose a charge for the Cash Advance. "Billing Cycle" means the time between monthly statement dates and will be considered equal if the number of days in the cycle does not vary by more than four days from the regular date of the statement. "Closing Date" means the date of the last day of the Billing Cycle. "New Balance" means the Account balance on the Closing Date. "Previous Balance" means the balance of the Account at the beginning of the Billing Cycle.

OPTIONS (18.9%, $19PF/79 AMF)
F01-6921-2-0999

EXHIBIT

B

tabbies®

## 2. GOVERNING LAW

This Agreement and your Account will be governed by federal law including the Federal Arbitration Act and the laws of the State of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada. This Agreement is entered into in Nevada and all credit under this Agreement is extended from Nevada. All terms and conditions of this Agreement including change of terms if applicable are provisions, the FINANCE CHARGE Late Fee, Returned Payment Fee, Overlimit fee and research charges provided for in this Agreement are deemed to be interest under this Agreement and material to the determination of the FINANCE CHARGE.

## 3. USE OF ACCOUNT

You may obtain Advances on your Account by presenting the Card to a merchant or bank or using your Card at an ATM or by giving your Account number without presenting the Card (such as in connection with mail orders or Internet or telephone purchases). Your responsibility for Advances you obtain by providing your Card number to a merchant over the telephone or the Internet or through mail is the same as if you presented your Card to and signed a sales slip provided by the merchant.

## 4. AUTHORIZATIONS

Advances over limits from time to time we will require our prior authorizations. Authorizations may be withheld if you are in default or the transaction would exceed your Credit Limit. We also may establish limits on the number of authorizations given in connection with certain Advances in one day or actual reasons, and we may withhold an authorization if we believe it may exceed these limits. In addition we may be unable to authorize an Advance if computer or other technical malfunctions are present in doing so. You agree that we will have no liability if an authorization is withheld for any reason.

## 5. FAILURE BY A MERCHANT TO HONOR CARD

You understand that not everyone we honor the Card that we may provide to you, and we will not be liable if a merchant, bank or other person fails to honor the Card.

## 6. PAYMENTS

By using or permitting another to use the Card or Account to make Purchase Advances or Cash Advances, you promise to repay the total amount of all Purchase Advances, Cash Advances, FINANCE CHARGES, and all Other Charges and fees provided for under this Agreement. You agree to rent all payments to the address we specify in your monthly statement. You promise that all payments will be in U.S. dollars, and by draft, cashier's check or personal check drawn on a U.S. bank. If we decide to accept payment from you in another form we can charge, and you agree to pay any costs we incur in converting your Card payment. If we accept any late or partial payments, or payments made with a restriction on them such as "paid in full", or payments marked "payment in full" or any other restriction, such action or inaction will not be a waiver of any of our rights under this Agreement. We will not be required to accept any payments by a third party check or draft which has been endorsed to us or which has been drawn by anyone other than you.

## 7. CREDIT LIMIT

The term "Credit Limit" describes the total amount of credit available to you at any one time under this Agreement. We will establish your Available Credit and your Credit Limit, and will show them on the accompanying card carrier. If this is a new Account and on each monthly statement. We may increase or decrease your Credit Limit or Available Cash Limit at any time and will provide notice if required by law. You promise you will not make Purchase Advances or Cash Advances which would cause your total unpaid balance under this Agreement, including FINANCE

CHARGES and Other Charges, to be more than your Credit Limit. We may in our sole discretion decline to authorize a transaction that exceeds your Available Credit Limit or your Credit Limit. Even if we authorize such a transaction, you agree to pay the amount that exceeds the applicable limit as well as any Overlimit fee immediately upon our demand. Any such authorization is not a waiver of your Available Cash Limit or Credit Limit for future transactions.

## 8. MINIMUM PAYMENTS

You promise to repay the entire unpaid balance. You agree to make payment either in full, or in installments of at least the Minimum Payment amount, on or before the "Payment Due Date" shown on your last statement. The Minimum Payment amount will be 3% of the New Balance shown on the statement, or $10, whichever is larger, plus any past due amounts. If your total New Balance is less than $10, you must pay the total New Balance amount. If your New Balance exceeds your Credit Limit, your Minimum Payment amount will be all past due amounts, plus the greater of the excess over your Credit Limit, or 3% of the New Balance. If the amount of any payment exceeds your total New Balance, we will apply the excess amount as a credit to your Account, and any remaining credit balance will be refunded as required by law.

## 9. MONTHLY STATEMENT

We will send you a statement for each Billing Cycle in which your Account has an outstanding balance of more than $1, or has a FINANCE CHARGE posted to it. Your monthly statement will show the Minimum Payment Due and the Payment Due Date.

## 10. FINANCE CHARGE

The FINANCE CHARGE on your monthly statement is figured separately for Purchase Advances and for Cash Advances.

### A. Purchase Advances.

(1) A FINANCE CHARGE calculated from the transaction date of any new Purchase will be imposed in the next Billing Cycle if (i) the Previous Balance is zero or a credit, or (ii) there is a Previous Balance that is paid in full within 25 days of the close of the Billing Cycle, and the entire New Balance, including new Purchase Advances, is not paid within 25 days of the close of the next Billing Cycle.

(2) A FINANCE CHARGE calculated from the transaction date of any new Purchase Advances will be imposed in the Billing Cycle in which it occurred when there is a Previous Balance which is not paid in full within 25 days of the close of the Billing Cycle.

(3) A FINANCE CHARGE calculated from the first day of the next Billing Cycle will be imposed on the amount of new Purchase Advances in the New Balance when the entire New Balance is not paid in full within 25 days of the close of the next Billing Cycle. We figure a portion of the FINANCE CHARGE by applying a periodic rate to the sum of the amounts determined in paragraphs (a) and (b) below.

(a) If the Payments on your current monthly statement are less than the Previous Balance, we calculate the "Average Daily Balance" of Purchase Advances and Other Charges (including current transactions).

To calculate the Average Daily Balance of your Purchase Advances and Other Charges, we take the beginning debit balance of your Account each day, add any Purchase Advances and Other Charges (including insurance premiums and unpaid FINANCE CHARGES) as of the transaction date and subtract any payments or credits received. This gives us the daily balance for Purchase Advances and Other Charges. If a debit

(b) If Payments on your current monthly statement are less than the Previous Balance, and Payments on your previous month statement were at least the Previous Balance, we calculate the Average Daily Balance of Purchase Advances and Other Charges posted in the previous Billing Cycle.

To calculate the Average Daily Balance of Purchase Advances and Other Charges posted in the previous Billing Cycle, we take the beginning balance of Purchase Advances and Other Charges posted during each day of the previous Billing Cycle as of the transaction date, add any Purchase Advances and Other Charges that pay and subtract any payments or credits received. This gives us the daily balance for Purchase Advances and Other Charges posted in the previous Billing Cycle. We then divide the daily balance of Purchase Advances and Other Charges in the previous Billing Cycle. If a debit transaction posts after the beginning of your Billing Cycle, the daily balance will be adjusted to include this transaction amount for each day the transaction was outstanding prior to the beginning of your Billing Cycle. We add these daily balances together to get the daily balance of Purchase Advances and Other Charges posted in the previous Billing Cycle. We then divide this amount by the number of days in the previous Billing Cycle. This gives us the Average Daily Balance of Purchase Advances and Other Charges posted in the previous Billing Cycle.

### B. Cash Advances.

The FINANCE CHARGE and related FINANCE CHARGES on Cash Advances has two separate parts - a transaction charge and interest. The transaction FINANCE CHARGE imposed is the greater of $3 or 3% of the amount of each new Cash Advance. In addition, you agree to pay interest on the amount of new Cash Advance from the date of the transaction until it is paid in full. The portion of the FINANCE CHARGE that is interest is calculated by applying the periodic rate in effect for the Billing Cycle to the Average Daily Balance of Cash Advances (including current transaction). To get the Average Daily Balance of Cash Advances, we take the beginning balance of your Account for Cash Advances each day and, as of the transaction date, add new Cash Advances and related FINANCE CHARGES, and subtract any payments or credits. This gives us the daily total Balance for Cash Advances. If a debit transaction posts after the beginning of your Billing Cycle, the daily balance will be adjusted to include this amount for each day the transaction was outstanding prior to the beginning of your Billing Cycle. We add all the daily balances for Cash Advances for the Billing Cycle and divide total by the number of days in the Billing Cycle. This gives us the Average Daily Balance for Cash Advances, which we multiply by the periodic rate in effect Billing Cycle. These two amounts make up the FINANCE CHARGE and related FINANCE CHARGES you owe on Cash Advances.

### C. Processing Fee.

A one-time Processing Fee FINANCE CHARGE of $19 will be charged to your application for the Card Account. This fee, which is our fee for processing your application and extending credit to you is paid by check or other instrument, if a debit

your application and is charged only once. If your application is not approved, your funds will be returned to you.

## 11. MONTHLY PERIODIC RATE

The monthly periodic rate used to compute a portion of the FINANCE CHARGE on your Account is a variable rate as described below. The monthly periodic rate in effect at the time your Account is opened is 1.5725% (corresponding ANNUAL PERCENTAGE RATE of 18.9%). This rate will be in effect for your first Billing Cycle.

B. On the first day of each Billing Cycle (the "rate determination date"), we will determine the applicable "interest rate index." The interest rate index shall be the Prime Rate listed in the Money Rates Table of The Wall Street Journal on the 15th day of the month (unless that date is not a business day in which case, the next business day) immediately before the month in which the rate determination date occurs. If more than one Prime Rate is listed on any such date, the interest rate index will be the average of the Prime Rates listed. If the above index is no longer available, we will choose a new index and we will modify you of this change.

C. The monthly periodic rate for the Billing Cycle shall be the greater of (a) 1.5725% (corresponding ANNUAL PERCENTAGE RATE of 18.9%) or (b) 1.9083% (corresponding ANNUAL PERCENTAGE RATE of 22.9%) (for accounts that are one or more days past due or 3% or more overdraft as of the first day of the Billing Cycle) or (c) the sum of the interest rate index plus 9.9% divided by 12 or (for Accounts that are one or more days past due or 3% or more overdraft as of the first day of the Billing Cycle). The monthly periodic rate will never be less than 1.5725% (corresponding ANNUAL PERCENTAGE RATE of 18.9%) or less than 1.9083% (corresponding ANNUAL PERCENTAGE RATE of 22.9%) (for Accounts that are one or more days past due or 3% or more overdraft as of the first day of the Billing Cycle).

D. Any increase or decrease in the interest rate index will take effect on the first day of the Billing Cycle and may result in an increase or decrease in your monthly periodic rate (and may result in an increase or decrease in the FINANCE CHARGE described above), and may result in an increase in the dollar amount of the required minimum payment, or in a smaller part of your payment being applied to reduce your Account balance. Any increase or decrease in the monthly periodic rate based on the past due or overdraft history of your Account, will take effect on the first day of the Billing Cycle and will have the same effect as described above.

## 12. OTHER CHARGES AND SERVICE FEES

Charges and service fees will be assessed against your Account in the circumstances described below. Except as otherwise provided, these fees and charges are nonrefundable, and each is subject to FINANCE CHARGES from the transaction date. We reserve the right at any time to waive collection of any such charge or service fee without affecting our right to collect any other or the same fee.

A. Annual Fee. Your Annual Fee is $79 per year. The initial Annual Fee is nonrefundable after the first transaction, and any renewal Annual Fee is nonrefundable after 30 days from the mailing date of the monthly statement on which the renewal Annual Fee is billed.

The Annual Fee compensates Household Bank in part for cardholder services provided throughout the membership year which include but are not limited to the right of the cardholder to access customer service staff the right of the cardholder to withhold payment of disputed charges and the processing and mailing of the monthly billing statement.

B. Late Payment Fee. If your minimum payment is not received by us by the Payment Due Date shown on your monthly statement, you agree to pay us a Late Payment Fee of $25. Only one Late Payment Fee will be collected for each Billing Cycle.

C. Overlimit Fee. If you allow your total unpaid balance to exceed your Credit Limit, we will charge an Overlimit Fee of $25 for each Billing Cycle in which your balance exceeds the Credit Limit.

D. Returned Payment Fee. You promise to pay us a Returned Payment Fee of $25 each time a check, automatic payment deduction or other instrument you give us for payment or order allowing us to is returned to us unpaid for any reason.

E. Replacement Fee. If you ask us to replace a Card that is lost, stolen, or damaged, or if you ask for a replacement Personal Identification Number (PIN) to facilitate access to Automated Teller Machines, you agree to pay us a Replacement Fee of $5.

F. Credit Insurance. We may offer Credit Insurance. If we do, you will not be required to purchase it in order to obtain credit. If you choose to purchase Credit Insurance, you authorize us to add its cost to your Account each month.

G. Reinstatement Fee. If you ask us to reopen your closed or blocked Account, and we approve your request, you agree to pay us a Reinstatement Fee of $25.

H. Other Fees. A fee of $10 will be charged to your Account for a duplicate copy of your original application. A fee of $1.50 per page will be charged to your Account when you have requested us to send you documents we deem acceptable. A fee of $3 will be charged to your Account each time you contact us via the automated calling system to obtain a copy of your Account for each month's statement. The fees for copies of the monthly statements and drafts will not be charged if the copies are required for the resolution of an asserted billing error.

## 13. SECURITY DEPOSIT (IF APPLICABLE)

If you have completed a Security Agreement for your Card Account, you have given us funds to secure all or certain of the balances owing on your Card Account. You have requested and authorized us to use the funds to open a FDIC-insured savings deposit account ("Deposit Account") with Orchard Federal Savings Bank in your name.

To secure payment of all amounts you owe on the Card Account, you assign, pledge, and grant to us a first priority security interest in the Deposit Account and in all renewals, additions, substitutions, and proceeds thereto and thereof, and the interest accrued thereon, as provided in the Security Deposit Account Agreement you signed and delivered to us along with the funds. In connection with your Security Agreement, you certified that the Deposit Account is exempt from backup withholding under applicable state and federal law. The

Deposit Account will be in your name, and will accrue interest at the rate established for savings deposit accounts from time to time. You may not make withdrawals from the Deposit Account.

Upon cancellation of your Card Account, either by you or by us and after any required notice, you authorize us to calculate and deduct from the Deposit Account, with Orchard Federal Savings Bank in favor of your Card Account and then, subject to any claims or applicable laws, we will send you any remaining proceeds in the Deposit Account at the last address shown for you on our records.

If your Card Account has both secured and unsecured Credit Limits and you ask Orchard Federal Savings Bank to return the Deposit Account to you, we will establish a new Credit Limit for your Account. Orchard Federal Savings Bank will return the Deposit Account to you provided that we first will deduct from the Deposit Account and apply to your Card Account balance an amount equal to the amount by which your total Card Account balance exceeds your new Credit Limit.

## 14. APPLICATION OF PAYMENTS

Subject to any mandatory provisions of applicable law, all payments processed by us will be applied to the balances on your Account in the manner we determine.

## 15. DEFAULT

You will be in default of this Agreement if (a) you fail to pay as promised; (b) you exceed your Credit Limit; (c) you violate any provisions of this Agreement or any other agreement you have with us or any of our affiliates (d) you die or become legally incompetent; (e) you file for bankruptcy, (f) any other creditor tries to take money or property of yours which you have assigned to us or is in our possession or (g) you move outside of the US or deposit a mailing address outside the US.

## 16. RESULTS OF DEFAULT

If you are in default, we may (subject to applicable law to the contrary) (a) decline to extend further credit to you; (b) terminate your Account without prior notice and require you to pay the total amount owed immediately; (c) contact you via the automated calling system; (d) exercise any and all of our rights with respect to this Agreement and (e) if we must bring legal action, require you to pay all of our costs of collection, including the cost of arbitration, court costs, and attorneys' fees as provided in the Arbitration of Disputes section of this Agreement if permitted by law.

"Promptly"

Account is one or more days past due or if your Account is 3% or more overdraft as of the first day of the Billing Cycle, the monthly periodic rate on the entire balance of your Account will be increased to a rate equal to the greater of the interest rate index then in effect plus 13.9% divided by 12 or 1.9083% (corresponding ANNUAL PERCENTAGE RATE of 22.9%) You also agree to pay any costs we incur if your Account is placed on a "Restricted List."

## 17. WAIVERS

You agree we can exercise any of our rights and remedies under this Agreement without losing any of the rights and remedies we do not exercise. And we can delay enforcing or waive any of our rights and remedies without affecting any of them. A waiver of any right by us shall not be deemed to be a waiver of other rights or of the same right at another time.

## 18. OTHERS USING YOUR ACCOUNT

If more than one person is authorized to use the Account, each of you is jointly and severally liable for the full amount of all Purchase Advances and Cash Advances including Purchase Advances and Other Charges associated with the Account including Purchase Advances and Cash Advances and charges in excess of your Credit Limit. Each of you has the right to use the Account and the Card(s) and is liable for all amounts extended under the Account to any of you. Once you accept your Card(s), you also agree to be responsible for all charges (a) incurred by persons with actual, implied or apparent authority to use your Card(s) and/or Account or (b) from which any of you receive a benefit, whether tangible or intangible. You promise to pay for all Purchase Advances and Cash Advances made by anyone you authorize to use your Account, whether or not you notify us that they will be using it. If someone else is authorized to use your Account, and you want that to end, you must let us know in writing, and if he or she has a Card, you must return that Card, or in pieces, with your written notification.

## 19. CANCELLATION

Subject to applicable law, we can cancel your Account, refuse to allow further transactions, or revoke your Card at any time, with or without notice. You can cancel your Account by writing us. Cancellation of your Account will not affect your obligation to repay us for the credit we have extended to you. If your Account is canceled by us without cause, we will refund or credit a pro rata portion of the Annual Fee.

## 20. CHANGE OF TERMS (including FINANCE CHARGES)

SUBJECT TO APPLICABLE LAW, WE MAY CHANGE OR TERMINATE ANY TERM OF THIS AGREEMENT OR ADD NEW TERMS AT ANY TIME, INCLUDING WITHOUT LIMITATION ADDING OR INCREASING FEES; INCREASING YOUR MONTHLY MINIMUM PAYMENT AND INCREASING THE RATE OR AMOUNT OF FINANCE CHARGE OR CHANGING THE METHOD OF COMPUTING THE BALANCE UPON WHICH FINANCE CHARGES ARE ASSESSED. PRIOR WRITTEN NOTICE WILL BE PROVIDED TO YOU WHEN REQUIRED BY APPLICABLE LAW. CHANGES MAY APPLY TO BOTH NEW AND OUTSTANDING BALANCES. WE MAY ASSIGN YOUR ACCOUNT TO OUR AFFILIATES OR TO SOME OTHER FINANCIAL INSTITUTION AT ANY TIME.

## 21. LOST OR STOLEN CARD

If your Card is lost or stolen, please notify us at once at 1-800-383-8373.

## 22. DISCLAIMER OF LIABILITY/SEVERABILITY

We offer the Card and related services in our best efforts and disclaim any duty or responsibility other than expressly set forth in this Agreement. If any provision of this Agreement is found to be unenforceable, all other provisions shall remain in full force and effect. The terms of this Agreement supersede any conflicting terms set forth on any sales slip or Cash Advance document.

## 23. ASSIGNMENT

You may not assign or transfer your Account to any other person, and another person cannot assume your rights and responsibilities under this Agreement. You can assign your Account or any interest in your Account to someone else without notifying you.

## 24. CREDIT REPORTS

We may release information to others, such as credit reporting agencies and other creditors, about your experience with your Account. You agree to supply us with and authorize us to obtain and verify updated credit information including credit reports, employment, and income records, from time to time in form and content we deem necessary. If we order a consumer report on you, upon your request we will inform you of the order and give you the name and address of the consumer reporting agency. If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles may release your residence address to us, should it become necessary to locate you.

## 25. NAME OR ADDRESS CHANGE

You agree to give us advance notice of any change in your name or address. The change must be sent to us at the address shown on your monthly statement. You agree that we may update your most current address from the Department of Motor Vehicles, and your name and address. California residents therefore waive Section 1808.21 of the California Vehicle Code.

## 26. ELECTRONIC TERMINALS

If you receive a personal identification number ("PIN") to access your Account at electronic terminals (e.g., ATMs), you agree not to write your PIN on your Card(s) or disclose your PIN to others. You also agree that we may terminate or suspend your use of electronic terminals with respect to your Account without cause or prior notice.

## 27. TELEPHONE INSTRUCTIONS AND MONITORING

We can reply upon instructions we receive over the telephone from someone we believe to be using your Account with your permission, and you agree that our records of those instructions will be conclusive evidence of the actual instructions given. We may monitor and record conversations in order to evaluate customer service and account security, and you consent to such monitoring and recording.

## 28. ARBITRATION

If you have any problems or questions regarding your Account or the Card(s), please contact us immediately. In our desire to resolve any questions or problems that may arise in connection with your Account as quickly and amicably as possible. However, if we are not able to resolve any dispute informally and subject to your rights to dispute billing errors (see "Notice" below), any claim, dispute, or controversy (whether based on contract, tort, intentional or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement (including the validity or enforceability of this arbitration clause or any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed. Rules and forms of the National Arbitration Forum may be requested by writing to, and all claims shall be filed at, any National Arbitration Forum office or at Post Office Box 50191, Minneapolis, Minnesota 55405. Our address for service of process hereunder is Post Office Box 80460, Portland, Oregon 97280. Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or such other location as you and we mutually agree. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act 9 U.S.C. Section 1-16. Each party shall bear the expense of their respective attorney's fees regardless of which party prevails. The arbitrator shall apply relevant law and provide written reasoned findings of fact and conclusions of law. The parties agree that the award shall be kept confidential. Judgement upon the award may be entered in any court having jurisdiction. Class

actions are not permitted unless the parties agree otherwise. THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT, BUT THAT THEY AGREE TO HAVE AN ELECTION TO RESOLVE ANY CLAIMS THROUGH ARBITRATION, AND THAT THEY HEREBY WAIVE THEIR RIGHTS TO LITIGATE CLAIMS IN A COURT UPON ELECTION OF ARBITRATION BY EITHER PARTY.

## 29. UNAUTHORIZED USE

You may be liable for the unauthorized use of your credit card(s). You will not be liable for unauthorized use that occurs after you notify BankCard Services at PO Box 80460, Portland, OR 97280-1460, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.

## 30. FOREIGN EXCHANGE/CURRENCY CONVERSION

If you use your Card for transactions in a currency other than U.S. dollars, the transactions will be converted to U.S. dollars, generally using either a (i) government-mandated rate or (ii) wholesale market rate in the effect the day before the transaction date, increased by 1%. If a credit is subsequently given for a transaction, it will not be increased by 1%. If the credit has a different processing date then the exchange rate on the credit can be greater/less than that of the original transaction. The currency conversion rate on the day before the transaction processing date may differ from the date the transaction is posted on your Account. You agree to accept the converted amount in U.S. dollars.

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

Notify Us In Case Of Errors or Questions About Your Bill
If you think your bill is wrong or if you need more information about a transaction on your bill, write (on a separate sheet) to BankCard Services, PO Box 80460, Portland, OR 97280-1460. Write as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

Please include the following information in your letter:
- Your name, account number and signature
- The dollar amount of the suspected error
- Describe the error and explain if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your Card Account bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

Your Rights and Our Responsibilities After We Receive Your Written Notice
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including FINANCE CHARGES, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while

we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any FINANCE CHARGES related to any questioned amount. If we didn't make a mistake, you may have to pay FINANCE CHARGES, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you, and you write to us within ten days telling us you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. Upon settlement of the dispute, we must tell everyone we report you to that the matter has been settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchase Advances**
If you have a problem with the quality of property or services you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or (if not within 100 miles of your current mailing address.

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**NOTICE REGARDING INACCURATE INFORMATION**
As a participant in the consumer reporting system we furnish information about our experience with you to consumer reporting agencies. These consumer reports allow us to make credit and other opportunities available to you. If you believe that we have furnished information to a consumer reporting agency that is inaccurate, please notify us at the following address and identify the specific information that is inaccurate. Write or call Bankcard Services, P.O. Box 80160, Portland, Oregon 97280-1460, (503) 293-3021.

## CERTIFICATE OF SERVICE

I, Michael S. Hilicki, an attorney, certify that I caused a copy of the attached **First Amended Class Action Complaint** to be served on the people at the address on the service list below by United States mail on July 27, 2004, before 5:00 p.m.

Michael S. Hilicki

### Service List

George R. Dougherty
Maile H. Solis
Grippo & Elden
227 West Monroe Street
Suite 3600
Chicago, Illinois 60606
Fax:   (312) 558-1195